IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| FRANCIS K. SCHMIDT, *et al.* | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No.: GJH-13-3282 |
| | * | |
| THE TOWN OF CHEVERLY, MD | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses the Motion to Dismiss or, Alternatively, for Summary Judgment of Defendant, the Town of Cheverly, Maryland, ECF No. 13; Plaintiff's Opposition, ECF No. 18; and Defendant's Reply, ECF No. 22; A hearing was held on August 4, 2014. For the reasons stated herein, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

## I.     BACKGROUND

In reviewing a motion to dismiss, this Court accepts the facts in the Amended Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Further, in review of a motion for summary judgment, the facts are to be considered in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009). The facts below are reviewed with these principles in mind.

Plaintiffs Francis K. Schmidt ("Officer Schmidt") and his wife, Donna Schmidt, brought this action against Officer Schmidt's former employer, Defendant, the Town of Cheverly, alleging retaliation against Officer Schmidt. That retaliation is alleged to have occurred because

Officer Schmidt exercised his rights under the Family Medical Leave Act (the "FMLA"), Title

VII of the Civil Rights Act of 1964 ("Title VII"), the Prince George's County Human Relations

Ordinance, the Maryland Human Rights Act, and the U.S. Constitution. *See* Am. Compl.

Defendant is a municipal government entity located in Prince George's County, Maryland. *Id.* at

¶ 3. Defendant employed Officer Schmidt as a police officer from sometime in 2008 until August

2012. *Id.* at ¶ 6.

According to several police officers, during staff meetings between 2008 and 2011,

Police Department Chief Harry Robshaw regularly stated that he would punish anyone who

attempted to exercise the right to report unfair or unlawful practices by him or the police

department. *Id.* at ¶ 11. He further stated that he appointed the trial board members, who are

responsible for handling internal disciplinary actions, and would ensure that a police officer who

complained would never work again.[1] *Id.*

In December 2008,[2] Chief Robshaw shoved a pool cue under Donna Schmidt's skirt at a

Christmas party. *Id.* at ¶ 13. He also told other officers of his desire to have sex with Mrs.

Schmidt. *Id.* at ¶ 14. Mrs. Schmidt did not initially report the incident for fear that Chief

Robshaw would retaliate against her husband. *Id.* at ¶ 15. At an unspecified time between 2008

and 2010, Chief Robshaw told one of the other police officers that Officer Schmidt was a

"problem" that they needed to "get rid of." *Id.* at ¶ 16. According to Officer Schmidt, between

the fall of 2010 and August 2011, Chief Robshaw called Officer Schmidt names, denied him

---

[1] Two individuals who formerly worked as police officers for Defendant and two individuals who currently work as police officers for Defendant have provided sworn statements, stating under the penalties of perjury that Chief Robshaw routinely made these type of statements. *See Pl. Opp., Exs. 3-6.*

[2] In separate filings, Mrs. Schmidt has also stated that the event occurred in December 2009. *See Def. Mot., Ex. 1*, November 15, 2011 charge of discrimination. The timing of this event is not relevant to any of the Court's rulings.

permission to engage in off-duty work, and assigned him to one of the oldest police cruisers. *Id.* at ¶ 18.

On September 29, 2011, Officer Schmidt suffered a hernia while at work. *Id.* at ¶ 30. Due to the hernia and required surgery, he was unable to work from September 30, 2011 until November 28, 2011. *Id.* at ¶ 31. During this time period, Chief Robshaw told Sergeant Edmund Gizinski: "I'm giving you a heads up since you're the FOP [Fraternal Order of Police] representative; Schmidt's trying to file workers' comp. so we're going to fire him." *Id.* at ¶ 37. *Id; See also Pl. Opp., Ex. 4, Aff. Earl Stone* at ¶ 14. This message was conveyed to Officer Schmidt on October 5, 2011 by another police officer. Am. Compl. at ¶ 37.

In October 2011, Mrs. Schmidt began contacting county, state, and federal officials to report what she believed to be Chief Robshaw's pattern of unlawful conduct.[3] Am. Compl. at ¶ 39. Chief Robshaw expressed concern that Mrs. Schmidt was "after his job." *Id.* at ¶ 41.

While unable to work due to the hernia, Officer Schmidt requested administrative leave. *Id.* at ¶ 33. Defendant's Administrator, David Warrington, originally granted Officer Schmidt 30 days administrative leave on October 12, 2011. *Id.* at ¶ 44. On November 3, 2011, Administrator Warrington granted Officer Schmidt an additional 30 days of leave in a letter stating that the leave was "30 days of designated FMLA [Family Medical Leave Act] leave (November 11th – December 11th) as administrative leave without pay." *See Pl. Opp., Ex. 8.* On November 9, 2011, Officer Schmidt wrote a letter to the administrator, stating that he was invoking his right to FMLA leave. Am. Comp. ¶ 46.

---

[3] The exact nature of the unlawful conduct that she reported is not clear from the Amended Complaint, but presumably involved Chief Robshaw's alleged sexual harassment of Mrs. Schmidt.

On November 4, 2011, one of the police officers began organizing a leave bank—where officers would donate their leave to help Officer Schmidt financially while he recovered—but Chief Robshaw advised: "I don't think it's going to happen with what she's done." *Id.* at ¶ 48. Another member of the police department added, "how does Schmidt expect to work here with what his wife has done." *Id.* at ¶ 49.

Donna Schmidt filed a "charge of discrimination" with the Prince George's County Human Relations Commission (the "PGCHR Commission") on November 15, 2011. *See Def. Motion, Ex. 1*. She alleged that Chief Robshaw sexually harassed her on several occasions beginning in December 2009. *Id.* In the same month, Officer Schmidt filed his own Charge of Discrimination with the PGCHR Commission. *See Def. Motion, Ex. 3*. He asserted discrimination based on disability as well as retaliation. *Id.* He stated that he suffered a work-related injury, that he had been aiding his wife in her sexual harassment complaints, that Chief Robshaw did not permit others to donate paid leave, and that he heard that the Chief was not going to permit him to return to work because of his wife's actions. *Id.*

On November 28, 2011, Officer Schmidt provided the police department with a physician's report that he was medically fit to return to work. Am. Compl. ¶ 53. A short time before Officer Schmidt was permitted to return to work, an officer heard Chief Robshaw say, "find some way to get rid of that mother fucker." *See Pl. Opp., Ex. 4, Aff. Stone* at ¶ 17. When the officer asked why the Chief wanted to fire Officer Schmidt, the Chief said, "I just don't like that mother fucker." *Id.*

Officer Schmidt returned to work on December 5, 2011. Am. Compl. at ¶ 57. On the same day he returned, Officer Schmidt was informed that Defendant was investigating whether Officer Schmidt was involved in and failed to report a hit and run accident in the summer of

2011. Am. Compl. ¶ 57.[4] Chief Robshaw was identified as the officer in charge of the investigation. *Id.* Officer Schmidt complains that, while the investigation was ongoing, he was subjected to humiliation and verbal abuse. *Id.* at ¶ 63. In April 2012, Officer Schmidt was suspended based on the hit and run allegations. *Id.* When Officer Schmidt was eventually permitted to return to work, he was often not allowed to enter the building, and at one point, was assigned to separate rubber bands and paper clips into paper cups. *Id.*

A hearing before a trial board was held in July 2012 with regard to the damage to the police car. *Id.* at ¶ 64. As a result of the investigation, Chief Robshaw added the charge that Officer Schmidt failed to report a pre-2011 accident involving the police vehicle when questioned during the investigation. *Id.* The trial board found Officer Schmidt not guilty of the hit and run and not guilty of the failure to report the hit and run, but guilty of a failure to disclose pre-2011 damage of the car during the investigation. *Id.* at ¶ 67. The trial board recommended a 40 hour suspension and $1,000 fine. *Id.* at ¶ 68. On August 13, 2012, Chief Robshaw increased the discipline to termination. *Id.* at ¶ 69. Chief Robshaw indicated that he considered Officer Schmidt's past job performance and the entire record of the hearing in making his decision. *Def. Mot., Ex. 15*. Specifically, Chief Robshaw found that because Officer Schmidt had been deceitful, testimony he gave in court on police matters would be discredited, meaning that he could no longer fulfill his duties. *Def. Mot., Ex. 13*. Further, Chief Robshaw found that

---

[4] According to Officer Schmidt, the car was in poor condition before the alleged time period and had been in an accident in 2010, which was reported. Am. Compl. at ¶ 19–20. Officer Schmidt went on vacation in August 2011, and the only problem he reported with the car before leaving was a problem with the emergency lights. *Id.* at ¶ 23. He learned that another officer drove the car to the repair shop while he was on vacation. *Id.* at ¶ 25. While at the repair shop, a tie rod broke out of the steering rack while the car was being removed from a lift, making the vehicle inoperable. *Id.* at ¶ 28.

continuing to permit Officer Schmidt to work in the department after he was found to have provided false statements would destroy morale among the other officers. *Id.*

On September 21, 2012, the PGCHR Commission dismissed Officer Schmidt's November 29, 2011 charge of discrimination. *See Def. Mot., Ex. 8.*[5] Officer Schmidt filed another charge of discrimination on October 2, 2012 (after he was terminated in August 2012) alleging that he was retaliated against for filing the November 29, 2011 charge. *See Def. Motion, Ex. 11.* He contended that because he filed the charge in November 2011, he was (1) given a written warning for violation of department policy on January 24, 2012; (2) suspended from police duty from April 2012 until August 2012; (3) reassigned to the Code and Photo Enforcement Unit; and (4) terminated on August 13, 2012. *Id.* Before the PGCHR Commission issued an order, Officer Schmidt requested a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 79.

Turning back to the November 29, 2011 charge, the EEOC adopted the findings of the PGCHR Commission with regard to that charge and sent Officer Schmidt a right-to-sue letter on May 15, 2013. *See Def. Mot., Ex. 10.* Plaintiffs filed a Complaint against Defendant on August 22, 2013 in the Circuit Court for Prince George's County. *See* ECF No. 1. On September 11, 2013, the EEOC sent Officer Schmidt a right-to-sue letter for the October 2, 2012 charge of discrimination. *See Pl. Opp., Ex. 10.* Thus, Plaintiffs amended their Complaint to reflect receipt of the second right-to-sue letter. *See* Am. Compl. ¶ 80.

---

[5] The PGCHR Commission determined that there was insufficient evidence that Officer Schmidt was discriminated against based on his hernia injury or retaliated against because of his wife's sexual harassment complaint. *See Def. Mot., Ex. 8.* The PGCHR Commission noted that Officer Schmidt's hernia was not a protected disability. *Id.* As for the retaliation for Mrs. Schmidt's sexual harassment complaint, the PGCHR Commission found that there was no connection between the sexual discrimination complaint and Defendant's failure to permit leave donation because Defendant established that it never permitted leave donations. *Id.*

Plaintiffs' Amended Complaint claims that Defendant retaliated against Officer Schmidt in a plethora of ways because he exercised his protected rights under the (1) Family Medical Leave Act ("FMLA"), (2) Title VII of the Civil Rights Act of 1964 ("Title VII"), (3) Prince George's County Human Relations Ordinance, (4) the Maryland Human Rights Act, and (5) the U.S. Constitution. *Id.* at ¶ 83–141. Officer Schmidt further contends that he was retaliated against for filing a workers' compensation claim. *Id.* at § 148–164. As for Mrs. Schmidt, she asserts "harm to the marital unit." *Id.* at ¶ 142–147. On November 4, 2013, Defendant filed a Notice of Removal to this Court.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. This Rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted).

If the Court considers matter outside the pleadings, as the Court does here,[6] the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12.(b). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* It is

---

[6] Defendant attached 24 exhibits to its motion to dismiss/motion for summary judgment and reply. Plaintiffs attached 11 exhibits to their opposition.

obvious that when the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," as is here, and the nonmoving party attaches exhibits to its opposition, the nonmoving party is aware that materials outside the pleadings are before the court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.2d 253, 260–61 (4th Cir. 1998). Further, a court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery). However, summary judgment should not be granted if the nonmoving party has not had the opportunity to discover information that is essential to his opposition to the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1987). If the nonmoving party feels that the motion is premature, that party can invoke Federal Rule of Civil Procedure 56(d). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Under Rule 56(d), a court may deny a motion for summary judgment if the nonmovant shows through an affidavit that, for specified reasons, he or she cannot not properly present facts, currently unavailable to him or her, that are essential to justify an opposition. Here, the nonmovant has not filed an affidavit under 56(d).

Summary judgment is proper only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007); *see also* Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine dispute exists with regard to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). Notably, the moving party can demonstrate that there is no genuine issue of material fact by explaining that "there is an absence of evidence in support of the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the party

seeking summary judgment demonstrates that there is no admissible evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 535 (D.Md. 2007). To satisfy this burden, the nonmoving party must produce competent evidence on each element of his claim. *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). The evidentiary materials presented must show facts from which the fact finder could reasonably find for the party opposing summary judgment. *Anderson*, 477 U.S. at 250–51.

## III. DISCUSSION

### a. COUNT I – FMLA Reprisal

In Count I, Plaintiffs allege that the Defendant retaliated against Officer Schmidt because Officer Schmidt exercised his rights under the Family Medical Leave Act ("FMLA"). Am. Compl. ¶ 17–20. Defendant challenges Officer Schmidt's right to bring any claim under the FMLA because he has neither alleged nor provided evidence to show that he was an "eligible employee" under the FMLA. *See Def. Mot.* at 8. Plaintiffs respond that the FMLA protects Officer Schmidt even if he was not an "eligible employee." *Pl. Opp.* at 20. Further, Plaintiffs argue that equitable estoppel should prevent Defendant's argument. *Id.* at 21–22.

### 1. Eligible Employee

The FMLA entitles an "eligible employee" to twelve workweeks of unpaid leave during any twelve-month period because of a serious health condition that prevents the employee from performing his or her job. 29 U.S.C. § 2612(a)(1)(D). An "eligible employee" is one who worked at least one year with the employer, worked a minimum of 1,250 hours during the twelve months prior to the first day requested for leave, and whose employer employs more than 50 employees

at the worksite or within 75 miles of the worksite. 29 U.S.C. § 2611(2)(A) & (2)(B)(ii).[7] An employer is prohibited from discriminating against an employee for engaging or attempting to engage in an activity protected by the FMLA. 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights.").

Defendant avers that Plaintiffs' Amended Complaint does not state the number of hours Officer Schmidt worked in the relevant year. *Def. Mot.* at 8. Further, Defendant urges, the Complaint does not explain whether Defendant employed the requisite number of employees for Officer Schmidt to be an "eligible employee." *Id.* In opposition, Officer Schmidt does not contend that he, in fact, is an eligible employee. Although he attached eleven exhibits to his opposition motion, including his own affidavit, the number of hours Officer Schmidt worked in the year he was injured and the number of employees who worked for Defendant are absent from those exhibits. The opposition and exhibits presented by Officer Schmidt also lack any indication that the hours Officer Schmidt worked were outside his own knowledge or that the number of employees was a fact unavailable to him when he filed the opposition. *See* Fed. Rule Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). Thus, the only allegation before the Court on this matter is Defendant's claim that it has fewer than fifty employees, making Officer Schmidt ineligible. *Def. Mot.* at 8.

---

[7] By virtue of being a public agency, the Town of Cheverly is an employer under the FMLA. 29 U.S.C. § 2611(4)(A)(iii).

Regardless of his eligibility, Officer Schmidt maintains that his actions are protected under the FMLA because he "reasonabl[y] believed he was covered by the FMLA." *See Pl. Opp.* at 20. Officer Schmidt asserts that the FMLA protects those who reasonably believe they are covered because, under 29 CFR § 825.220, an employer is prohibited from retaliating against an employee who exercises or *attempts* to exercise FMLA rights. *Id.*

To establish a *prima facie* case of retaliation under the FMLA, an employee must show that he engaged in a protected activity, that his employer took an adverse action against him, and that there is a causal connection between the protected activity and the adverse action. *Yashenko v. Harrah's NC Casino Co, LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006). An employee attempting to engage in a non-existent right cannot establish the first element of a *prima facie* case because he or she has not engaged in a protected activity under the FMLA. *See Morehardt v. Spirit Airlines, Inc.*, 174 F. Supp. 2d 1272, 1279–80 (M.D. Fla. 2001) (finding that an employee who was not eligible for FMLA leave could not establish a retaliation claim because the employee did not engage in a protected activity); *Wemmitt-Park v. Beech Mountain Club*, 140 F. Supp. 2d 571, 581 (W.D. N.C. 2001) (granting summary judgment to an employer on a FMLA retaliation claim because the "Plaintiff never engaged in a 'protected activity' under the FMLA; that is, she was not eligible for FMLA leave"). Indeed, Courts have specifically found that the FMLA does not protect those who are retaliated against for attempting to exercise FMLA rights that they do not possess. *See Anusie-Howard v. Board of Educ. Of Balt. Cnty.*, 2012 WL 1964097, 12-cv-0199, *2–3 (D. Md. May 30, 2012) (finding employee failed to state a claim for retaliation under the FMLA because she did not identify facts that she worked more than 20 hours per week); *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) ("The FMLA makes it unlawful for an employer to interfere with the attempt 'to exercise any right *provided under this*

*subchapter*,' and the right to leave is provided only to eligible employees. . . we hold that the statute does not protect an attempt to exercise a right that is not provided by FMLA . . .") (internal citations omitted) (emphasis in original).

Plaintiffs have neither alleged nor brought evidence before the Court to show that Officer Schmidt was an eligible employee under the FMLA. Without evidence of Officer Schmidt's FMLA eligibility, Plaintiffs cannot satisfy the first element of a *prima facie* FMLA retaliation claim.

### 2. Equitable Estoppel

Plaintiffs argue that even if Officer Schmidt was not actually an "eligible employee," Defendants should be equitably estoppel from denying Officer Schmidt's eligibility. *Pl. Opp.* at 21–22. Equitable estoppel is applicable when "one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Bakery & Confectionery Union and Indus. Intern. Pension Fund v. Ralph's Grocery Co.*, 118 F. 3d 1018, 1027 (4th Cir. 1997) (citation and internal quotation marks omitted). Importantly, "the party claiming estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worst." *Heckler v. Comm. Health Servs. Of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984). The Fourth Circuit has not yet applied equitable estoppel in the context of FMLA eligibility, but several other circuits and at least one district court within the Fourth Circuit have done so. *See Dobrowski v. Jay Dee Contractors*, 571 F.3d 551, 555 (6th Cir. 2009); *Baker v. Hunter Douglas, Inc.*, 270 Fed. Appx. 159, 164 (3rd Cir. 2008); *Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352, 359 (5th Cir. 2006); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725–26 (2nd Cir. 2001); *Blankenship v. Buchanan Gen. Hosp.*, 999 F. Supp. 832, 838 (W.D. Va. 1998).

In *Kosakow*, an employee was unaware that she needed to have accumulated 1,250 hours of work to be eligible for FMLA leave because the employer had failed to post appropriate notices. *See* 274 F.3d at 725. The employee stated that had she known of the hour requirement, she would have ensured that she met the requirement before taking leave. *Id.* The employee also explained that the reason for her leave, an operation, was not an emergency—it was long planned and could have been rescheduled. *Id.* at 727. Under these facts, the Second Circuit found that the employee had created a genuine issue of material fact as to whether equitable estoppel applied. *See id.*; *compare Minard*, 447 F.3d at 359 (finding genuine issue of fact existed as to equitable estoppel because employee argued that she would have taken medical alternatives aside from surgery if she knew she was not FMLA eligible); *with Baker*, 270 Fed. Appx. at 164 (finding plaintiff could not show detrimental reliance because she was unable to perform the essential functions of her job and therefore she could not show that she could have returned to work absent her employer's statements); *and Dobrowski*, 571 F.3d at 558 (finding plaintiff had not created a genuine issue of material fact as to whether he relied on employer's misrepresentation of FMLA eligibility because plaintiff failed to identify any evidence that he would have rescheduled his surgery had he known he was not FMLA eligible).

In this case, Plaintiffs offer a letter dated November 3, 2011, from Defendant's administrator, as evidence of Defendant's misrepresentation that Officer Schmidt was an "eligible employee" under the FMLA. The letter states, in relevant part, ". . . I am granting you another 30 days of designated FMLA leave (November 11th – December 11th) as Administrative Leave without pay." *See Pl. Opp., Ex. 8*. Officer Schmidt then wrote a letter to Defendant's administrator on November 9, 2011, stating "[p]er your correspondence of October 13, 2011 Administrative Leave without pay was granted until November 11. Taking into consideration the

Certification of Disability provided by my physician and with the expiration of the afore mentioned [sic] leave approaching, on advice of counsel, I am notifying you of my right to invoke the FMLA . . . as of today." *See Def. Mot., Ex. 23*. In the light most favorable to the nonmoving party, this letter provides some evidence of reliance on Defendant's representation that Office Schmidt was given FMLA leave.

Where Plaintiffs' evidence of equitable estoppel is completely lacking, however, is in showing any detriment due to his reliance on Defendant's indication that Officer Schmidt was eligible for FMLA leave. Indeed, the evidence presented indicates that Officer Schmidt could not have returned to work regardless of whether he knew that he was not eligible for FMLA leave. In his affidavit, Officer Schmidt states, "[a]s a result of the [September 29, 2011] hernia injury and necessary medical treatment, I was unable to work from September 30 to about November 28, 2011." *See Pl. Opp., Ex. 1*. Thus, unlike the employees in *Kosakow*, 274 F.3d at 725–727, and *Minard*, 447 F.3d 352, where surgery would have been delayed or alternative medical treatment would have been pursued, Officer Schmidt was unable to work. This case is more in line with *Baker*, 270 Fed. Appx. 159, and *Dobrowski*, 571 F.3d 551, where the employees could not work or did not provide evidence that surgery would have been rescheduled.

When questioned on this issue at oral argument, Plaintiffs' counsel indicated that he did not know whether Officer Schmidt would have returned to work early if he thought he was ineligible for FMLA leave. Whether Officer Schmidt would have tried to return to work is within his knowledge and was not presented in the record before the Court. *See generally* Fed. R. Civ. P. 56(d) (explaining Court may allow time to obtain additional information when facts are unavailable to the nonmovant). Knowing that he was making an estoppel argument, Officer Schmidt stated that he was unable to work during the relevant time period. *See Pl. Opp., Ex. 1*.

As Plaintiffs offered no evidence of detrimental reliance, the estoppel doctrine does not apply in this case.

Defendant's Motion to Dismiss, or in the alternative, Summary Judgment as to Count I is GRANTED.

### b. COUNT II – EEO Reprisal

In Count II, Plaintiffs contend that Defendant retaliated against Officer Schmidt for exercising his rights under Title VII and other state law discrimination statutes. Am. Compl. ¶ 21–24. Defendant attacks this claim specifically as it relates to Title VII.[8] Defendant contends that the claim should be dismissed as it relates to the November 29, 2011 charge of discrimination because it was untimely. *Def. Mot.* at 13–17. Defendant also asserts that the Title VII claim should be dismissed for lack of causation. *Id.* at 9–10.

#### 1. Title VII – Timeliness

Defendant argues that Plaintiffs' Title VII claim, as it relates to Officer Schmidt's November 29, 2011 charge of discrimination, was untimely. *See Def. Mot.* at 13-16. Under Title VII, it is unlawful for an employer to ". . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

---

[8]Plaintiffs point out that Defendant's arguments against Plaintiff's "EEO Reprisal" claim only relate to Title VII and not Plaintiffs' allegations that Defendant's discrimination also violated the Prince George's County Human Relations Ordinance and the Maryland Human Rights Act discrimination laws. *See Pl. Opp.* at 16–18. Defendant addresses this point in its reply, not simply contending that its arguments against the state law discrimination statutes and Title VII would be the same, but arguing that the state laws do not apply to Officer Schmidt. *See Def. Reply* at 7.

The Court declines to address whether Plaintiffs' EEO Reprisal count should be dismissed with regard to state law claims because it was raised for the first time in Defendant's reply brief. *See Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F.Supp. 2d 527, 535 (D.Md. 2010) ("Ordinarily, arguments raised for the first time in a reply brief or memorandum will not be considered.")

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is also unlawful for an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [subchapter VI], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [subchapter VI]." 42 U.S.C. § 2000e-3(a). If an employee alleges that discrimination or retaliation has occurred, the employee is required to exhaust the administrative process before filing a lawsuit. *Chacko v. Patuxent Inst.*, 429 F. 3d 505, 509–10 (4th Cir. 2005). As the first step in accomplishing this task, the employee must file a "charge of discrimination" with the appropriate state or local agency or the United States Equal Opportunity Commission ("EEOC"). *See Weathersbee v. Balt. City Fire Dep't*, 970 F.Supp. 2d 418, 426 (D. Md. 2013). If the local agency dismisses the claim or claims, and the EEOC agrees, the EEOC will issue a "Dismissal and Notice of Rights" letter, called a "right-to-sue" letter. *Id.* After receiving the right-to-sue letter, an employee has ninety days to file suit in federal or state court. *Id.* at 426–27. The ninety-day-requirement is strictly enforced. *Id.* at 427.

Rule 6 of the Federal Rules of Civil Procedure governs the computation of time for federal statutes that do not otherwise specify a method of computing time, which includes Title VII. *See* Fed. R. Civ. P. 6(a). Relevant to this matter, a presumption exists that a plaintiff receives a right-to-sue letter three days after it was issued or mailed *See* Fed. R. Civ. Pro. 6(d); *see also Baldwin Ctny. Welcome Cent. v. Brown*, 466 U.S. 147, 148 n.1 (1984). However, the three-day-presumption can be rebutted "[i]f a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach h[im] by mail . . ."

*Weathersbee*, 970 F.Supp. 2d at 427-28 (*quoting Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996) (internal quotation marks omitted).

Plaintiffs base their Title VII claims on two charges of discrimination that Officer Schmidt filed with the Prince George's County Human Relations Commission (the "PGCHR Commission"). The first charge of discrimination was filed on November 29, 2011 (the "November 29, 2011 charge"), and the second charge of discrimination was filed October 2, 2012 (the "October 2, 2012 charge"). *See Def. Mot., Exs. 3 & 11*. The PGCHR Commission dismissed the November 29, 2011 charge and administratively closed the October 2, 2012 charge. *See Def. Mot, Exs. 8 &* 16. The EEOC issued Officer Schmidt a right-to-sue letter related to the November 29, 2011 charge on May 15, 2013. *See Def. Mot., Ex. 10*. Under Fed. R. Civ. P. 6, Officer Schmidt is presumed to have received the letter on May 18, 2013. Officer Schmidt would have had ninety days from May 18, 2013 to file suit: Friday, August 16, 2013. *See Weathersbee*, 970 F.Supp. 2d 418, 426–27. Plaintiffs filed this lawsuit in the Circuit Court for Prince George's County on August 22, 2013, ninety-nine days after presumably receiving the right-to-sue letter. *See* ECF No. 2.

In an effort to rebut the presumption, Plaintiffs have submitted sworn statements from Officer Schmidt and his wife each stating that they received the right-to-sue letter on May 24, 2013, exactly ninety days before Plaintiffs filed their lawsuit. *Pl. Opp.* at 18*; Pl. Opp, Exs. 1–2*. Both affidavits state: "A right to sue letter was issued by the US EEOC with regard to the November 29, 2011 charge. I received it on May 24, 2013." *Pl. Opp., Exs. 1-2*. Defendant contends that only a postmark date on the right-to-sue letter would be sufficient to rebut the presumption that the Schmidts received it on May 18, 2013. *See Def. Mot.* at 16. This is incorrect. While a later postmark date would be sufficient to alter the mailing date, as discussed

above, a party can also rebut the presumption by presenting evidence that it took longer than three days to reach the party. *Weathersbee* 970 F.Supp. 2d at 427-28 (*quoting Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996) (internal quotation marks omitted). Defendant further argues that the Schmidts cannot simply rely on their allegations regarding the date they received the right-to-sue letter. *See Def. Mot.* at 16. While this is true, Plaintiffs are relying on more than allegations in a party's brief; they rely on statements made on personal knowledge and under the penalties of perjury.

In *Hilton v. Bedford Paving, LLC*, 769 F.Supp. 2d 92, 99 (W.D.N.Y. 2010), plaintiffs' sworn affidavits indicating that they never received a right-to-sue letter were sufficient, absent any contrary evidence, to rebut the three-day-presumption. *Cf. Brown v. Mayor & City Council of Baltimore*, 2010 WL 481322, Civ. No. 08-2549 *3 (D.Md. Feb. 5, 2010) (finding that plaintiff had failed to establish timeliness of claim when he chose not to file an affidavit after Court advised him to file sworn affidavit as to the date he received the right-to-sue letter). Similar to *Hilton*, here, the Schmidts' sworn affidavits state that they received the right-to-sue letter on May 24, 2013. Defendant has provided no contrary evidence that would make the Court wary of the Schmidts' statements. Thus, the Schmidts have rebutted the three-day-presumption and timely filed this lawsuit as it relates to the November 29, 2011 charge.[9]

### 2. Title VII - Causation

Defendant argues that the record in this case is void of evidence of a causal connection between any Title VII protected activity that Officer Schmidt may have engaged in and any adverse action that may have been taken by Defendant. *Def. Mot.* at 10. To establish a *prima*

---

[9] The lawsuit was also timely filed as it related to the October 2, 2012 charge. The EEOC sent the right-to-sue letter on September 11, 2013. *See Pl. Opp., Ex. 10*. Plaintiffs' amended their Complaint in October 2013 to reflect receipt of the letter. *See* Am. Compl. ¶ 80.

*facie* case of retaliation under Title VII, an employee must show he engaged in a protected activity, that his employer took an adverse action against him, and that there is a causal connection between the protected activity and the adverse action. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). "But-for" causation is required in a Title VII retaliation claim. *See Univ. of Tex. Southwestern Med. Cntr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). But-for causation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2523.

Officer Schmidt's alleged protected activities and Defendant's adverse actions are set forth in Officer Schmidt's charges of discrimination.[10] The November 29, 2011 charge states that Officer Schmidt believes he was discriminated against because he suffered a work-related injury, and he was retaliated against because he participated in his wife's sexual harassment complaints against Chief Robshaw. *See Def. Mot., Ex. 3.* The November 29, 2011 charge does not propose any discriminatory action that was taken against Officer Schmidt because of his work-related injury. *Id.* The November 29, 2011 charge does address discriminatory action as it relates to

---

[10] The Court is aware that Plaintiffs' Amended Complaint alleges forms of adverse actions leading up to the suspension and ultimate termination not included in Officer Schmidt's charges of discrimination. *See* Am. Compl. ¶ 113. Defendant contends that these actions cannot serve as the basis for Plaintiffs' claims, and Plaintiffs should be limited to the retaliations allegations in the November 29, 2011 and October 2, 2012 charges. The Court agrees. *See Evans v. Technologies Applications & Services Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."). However, Plaintiffs are still permitted to include discriminatory actions reasonably related to the original charges as part of their claim. *Id.* Further, prior discriminatory acts may be relevant background evidence of the discriminatory acts actually at issue. *Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir. 1983).

Officer Schmidt's wife's sexual harassment complaints. *Id.* Specifically, the November 29, 2011

charge explains:

> [s]ince the Respondent's knowledge of her complaints I have been subjected to
> the following retaliation: [i]n October 2011, my co-worker approached the
> Lieutenant and the Chief of Police to donate leave to me; however, the cited
> Lieutenant and Chief of Police refused to allow him to donate leave because of
> my participation in my wife's sexual harassment complaints against my boss, the
> Chief of Police. During this incident the Lieutenant states "it's not going to
> happen," and "[h]ow does he (referring to me) expect to come back to work after
> all the shit his wife has been doing?" As a result of their intentional retaliatory
> action towards me I was on leave from September 2011-November 2011, without
> pay, which is a financial means to support myself and my family. I believe I have
> been subjected to the aforementioned retaliatory action because of my
> participation in my wife's sexual harassment complaints against the cited Chief of
> Police, which is retaliatory and unfair.

*Id.* In the October 2, 2012 charge, Officer Schmidt states that he believes he was retaliated

against because he filed the November 29, 2011 charge. *See Def. Mot., Ex. 11*. Specifically,

Officer Schmidt states:

> [s]ince filing the initial discrimination complaint[,] I have been subjected to the
> following retaliatory actions by the Respondent: On January 24, 2012, I was given
> a written warning for an alleged violation of Department's policy; from April
> 2012 through August 2012, I was suspended from policy duty and reassigned to
> the Department's Code Enforcement Unit and Photo Enforcement Unit; and on
> August 13, 2012, the Respondent terminated my employment. I believe I was
> subjected to the aforementioned retaliatory action because I filed a Charge of
> Discrimination against the Respondent.

*Id.*

Defendant does not contend that these charges fail to set forth protected activities and

adverse actions.[11] Defendant's challenge is to causation. To show a connection between these

---

[11] During the August 4, 2014 hearing, the Court raised whether Officer Schmidt's charges of
discrimination relate to any protected activity under Title VII. However, Defendant has not
moved to dismiss on these grounds and the parties have not otherwise briefed this issue. Thus,
for the purpose of this motion, the Court will assume, without deciding, that Officer Schmidt's
charges do contain allegations of protected activity that would be covered under Title VII. *See
generally Netscape Comm. Corp. v. ValueClick, Inc.*, 704 F.Supp. 2d 544, 565 n.39 (E.D. Va.

protected activities and adverse actions, Plaintiffs attached sworn statements, pursuant to Fed. R. Civ. P. 56(c)(4), to their opposition motion. These sworn statements constitute evidence that the Court may consider on summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (an issue of fact must be supported by "citing to particular parts of materials in the record, including . . . affidavits or declarations"). In these sworn statements, at least five police officers, including Officer Schmidt, who were formerly or are currently employed by the Defendant, state that Chief Robshaw often threatened to fire any officer who ever made an internal or external complaint against him or the police department. *See Pl. Opp., Exs 1, 3-6.* According to these officers, Chief Robshaw further explained that he appointed the trial board members and would make sure that any officer who challenged him never worked in law enforcement again. *Id.* Moreover, a short time after Officer Schmidt filed his November 29, 2011 charge, one officer heard Chief Robshaw say "find some way to get rid of that mother fucker." *See Pl. Opp., Ex. 4.* These statements are direct evidence to support a *prima facie* case of causation.

To challenge the causation element of Plaintiffs' Title VII claim, Defendant has introduced a sworn statement from Chief Robshaw, which contradicts Plaintiffs' declarations, providing that Officer Schmidt was terminated as the result of an internal investigation into Officer Schmidt's conduct. *See Def. Mot., Ex. 15.* Presented with this conflicting evidence, however, a reasonable fact finder could find that Officer Schmidt's filing of a Title VII charge and participation in his wife's sexual harassment claim were but-for causes of Defendant's adverse actions. S*ee Anderson*, 477 U.S. at 251 ("the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury

---

2010) (listing cases finding that court cannot grant summary judgment on a claim not raised by litigants). The parties may wish to revisit this issue in the future.

could return a verdict for the plaintiff on the evidence presented"). Defendant's Motion to Dismiss or for Summary Judgment as to Count II is DENIED.

### c. COUNT III & V – Wrongful Discharge & Workers' Compensation Retaliation

Plaintiffs contend that Defendant wrongfully discharged Officer Schmidt for exercising his rights under Maryland's Workers Compensation Act, the Maryland Human Rights Act, Title VII, and the Prince George's County Human Relations Ordinance.[12] Am. Compl. ¶ 128. Defendant asserts that Officer Schmidt's wrongful discharge can only potentially be based on the Workers' Compensation Act because the other statutes provide their own remedy. *Def. Mot.* at 10–12. Defendant also contends that the wrongful discharge claim should otherwise be dismissed for lack of causation. *Def. Mot.* at 13.

#### 1. Statutes behind Plaintiffs' claim

Defendant asserts that, other than the Workers' Compensation Act, wrongful discharge cannot be based on federal and state anti-discrimination laws, which each set forth their own remedial scheme for violation of the particular law. *See Def. Mot.* at 10–12. The Court agrees. Under *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 615 (D. Md. 2008), in Maryland, wrongful discharge only serves as the remedy for violations of state laws that do not establish their own

---

[12] Plaintiffs also allege that Officer Schmidt was retaliated against because his wife exercised her First Amendment rights, and an officer cannot be retaliated against for exercising constitutional rights under the Maryland Law Enforcement Officers' Bill of Rights. *See Pl. Opp.* at 24. The Court will not entertain this contention as Officer Schmidt admits that it was his wife (who is not a police officer), and not Officer Schmidt, who was exercising her First Amendment rights. *See* Md. Code, Public Safety Article § 3-103(d) ("A law enforcement officer may not be discharged, disciplined, demoted, or denied promotion, transfer, or reassignment, or otherwise discriminated against in regard to the law enforcement officer's employment or be threatened with that treatment because the law enforcement officer: (1) has exercised or demanded the rights granted by this subtitle; or (2) has lawfully exercised constitutional rights.").

remedy. In their wrongful discharge count, Plaintiffs cite the Maryland Human Rights Act, Title VII, the Prince George's County Human Relations Ordinance, and the Workers' Compensation Act. Of these statutes, only the Workers' Compensation Act does not provide an aggrieved party with a private cause of action. *See* 42 U.S.C. § 2000e-5(f) (providing for civil action when provision of Title VII is allegedly violated); Md. Code, State Gov't Article § 20-1202(b) (providing citizen with cause of action for violation of Prince George's County Code).

As Defendant appears to concede, wrongful discharge is the proper claim when an employee is retaliated against for filing a workers' compensation claim. *Ayers v. ARA Health Servs., Inc.*, 918 F. Supp. 143, 149 (1995) ("Maryland recognizes a private cause of action for wrongful discharge for filing a workers' compensation claim"). Although the workers' compensation statute prohibits such retaliation, it does not provide its own remedy. *See* Md. Code, Labor & Empl. Article § 9-1105. Thus, the Court limits Plaintiffs' wrongful discharge count to violation of the Maryland Workers' Compensation Act.[13]

### 2. Causation

With regard to the wrongful discharge count, citing Chief Robshaw's sworn statement, Defendant asserts that it is entitled to summary judgment on the issue of causation because "the motivation for discharge was completely unrelated to any proceedings or claims related to Maryland workers' compensation laws." *See Def. Mot.* at 13. The Maryland Workers' Compensation Act prohibits an employer from discharging an employee solely because the covered employee filed a claim for workers' compensation. *See* Md. Code, Labor & Empl. Article § 9-1105. To prevail on a wrongful discharge claim premised on a violation of § 9-1105,

---

[13] Officer Schmidt also filed a separate count for "Workers' Compensation Retaliation" in Count V. The Court will merge counts III and V as they together state a claim for wrongful discharge based on Maryland's workers' compensation statute.

plaintiffs must prove that the employer's *sole* reason for the discharge was the filing of the workers' compensation claim. *Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647, 650 (D. Md. 1998). Notably, however, the employee can still prevail on causation if the employer's termination is wrongful for two reasons—for example, in violation of Title VII and the Workers' Compensation Act. *Id.* at 650–51.

In this case, in one corner, there is Defendant contending: "the motivation for discharge was completely unrelated to any proceedings or claims related to Maryland's Workers' Compensation laws. . . The motivation for termination was articulated and supported by Chief Robshaw in August 2012." *See id.* In the other corner, Plaintiffs provide evidence that Officer Schmidt was terminated because he filed a workers' compensation claim. *See Pl. Opp., Ex. 4* ("In early October 2011, I heard that the Chief of Police was going to fire Officer Schmidt for making a workers' compensation claim."); *Pl. Opp, Ex. 5* ("On or about October 5, 2011, the Chief of Police advised me that Officer Schmidt was going to be fired for making a workers' compensation claim."). This presents a classic material dispute of fact over whether Defendant ultimately terminated Officer Schmidt because he filed a workers' compensation claim. When material facts are in dispute, summary judgment is not appropriate. *See* Fed. R. Civ. P. 56(a). Defendant's Motion to Dismiss or for Summary Judgment as to Count III is GRANTED in part and DENIED in part.

### d.  Count IV – Harm to the Marital Unit

Defendants do not challenge Plaintiffs' "harm to the marital unit" count other than contending that any harm to the marital unit would be the result of the wrongful discharge and should be dismissed if the wrongful discharge count is dismissed. Because the Court is not dismissing the wrongful discharge count, it will also decline to dismiss the harm to the marital

unit count.[14] Defendant's Motion to Dismiss or for Summary Judgment as to Count IV is DENIED.

### e. Punitive Damages

Punitive damages are not available in Title VII actions against governments. *See* 42 U.S.C. § 1981a(b); 29 U.S.C. § 2617(a). Punitive damages are also not available against governments under Maryland's Local Government Tort Claims Act. *See* Md. Code, Courts & Judicial Proceedings § 5-303(c)(1). As plaintiffs' claims fall under Title VII and state law, Defendant asserts that any claims for punitive damages should be dismissed based on the above authorities. *Def. Mot.* at 18. Plaintiffs failed to respond to this argument in their opposition. The motion to dismiss Plaintiffs' claim for punitive damages is GRANTED.

### IV.   CONCLUSION

In sum, for the reasons stated above, Defendant's Motion to Dismiss or, in the Alternative, Summary Judgment is GRANTED IN PART and DENIED IN PART.

Defendant's motion is GRANTED as to Count I – FMLA Reprisal.

Defendant's motion is DENIED as to Count II – EEO Reprisal.

Defendant's motion is GRANTED in part and DENIED in part as to Counts III & V – Wrongful Discharge and Workers' Compensation Retaliation. Plaintiffs' Wrongful Discharge

---

[14] "Harm to the marital unit" is a tort not yet seen in Maryland. However, looking at Plaintiffs' Amended Complaint, they allege that the marital unit was harmed by the "financial and emotional strain to Officer Schmidt which has rendered him unable to participate in marital and family life and to provide the financial and emotional support he would have provided but for Defendant's wrongful conduct." Am. Comp. ¶¶ 142–49. Under these allegations, the claim is best characterized as "loss of consortium." *See Gillespie-Linton v. Miles*, 58 Md. App. 484, 488–89, 473 A.2d 947, 949 (Md. Ct. Spec. App. 1984). ("Today, in Maryland, a loss of consortium action is . . . founded on . . . a recognition of 'a right to recover for an injury to the marital entity . . .'") (internal citation omitted).

claim is based now only on violation of the Workers' Compensation Act and Count III is merged with Count V.

Defendant's motion is DENIED as to Count IV – Harm to the Marital Unit.

Defendant's motion is GRANTED as to punitive damages.


Dated: <u>September 23, 2014</u>                    _____/s/_____
                                                    GEORGE J. HAZEL
                                                    UNITED STATES DISTRICT JUDGE