FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 AUG 30 A 10: 04

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
Southern Division

**FRANCIS K. SCHMIDT**, *et al.*,

    **Plaintiffs,**

v.

**THE TOWN OF CHEVERLY, MD.,**

    **Defendant.**

Case No.: GJH-13-3282

## MEMORANDUM OPINION

This is a retaliation case brought by Francis Schmidt ("Ofc. Schmidt") and his wife Donna Schmidt (collectively, "Plaintiffs"), against Ofc. Schmidt's former employer, the Town of Cheverly, Maryland ("Defendant"). Ofc. Schmidt alleges that he was retaliated against because he exercised his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Prince George's County Human Relations Ordinance, Prince George Cty Code §2-185 *et seq.*, the Maryland Fair Employment Practices Act ("FEPA"),[1] Md. Code Ann., State Gov't § 20-601 *et seq.*, the Maryland Worker's Compensation Statute, Md. Code Ann., Lab. & Empl. § 9-1105 *et seq.*, and the Law Enforcement Officer's Bill of Rights ("LEOBR"), Md Code, Public Safety, § 3-101 *et seq.* Additionally, Plaintiffs allege the common law tort of loss of consortium.

Defendant's Motion for Summary Judgment, ECF No. 39, came before the Court for a hearing on June 30, 2016. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Defendant's Motion for Summary Judgment is granted in part and denied in part.

---

[1] In his Amended Complaint, Plaintiff refers to alleged violations of the "Maryland Human Rights Act," but he cites to the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601.

## I. BACKGROUND[2]

Having previously addressed in some depth the relevant facts when the Court considered Defendant's earlier Motion to Dismiss, or Alternatively, Motion for Summary Judgment, the Court will not repeat that discussion here. *See Schmidt v. Town of Cheverly, Md.*, No. GJH-13-3282, 2014 WL 4799039 (D. Md. Sept. 25, 2014) ("*Schmidt I*"). Rather, the Court will only summarize those facts necessary to resolve the present motion.

Defendant, the Town of Cheverly, is a municipal government entity located in Prince George's County, Maryland. ECF No. 4 ¶ 3. Ofc. Schmidt was employed as a police officer by Defendant from sometime in 2008 until August 2012. ECF No. 42-1 ¶ 1. At all times relevant to this action, Chief Harry Robshaw had authority with regard to Cheverly Police Personnel policies. ECF No. 42-1 at 1; ECF No. 39-29 ¶ 2. In December 2008, Chief Robshaw "shoved a pool cue" under Mrs. Schmidt's dress at a Christmas party. ECF No. 42-3 ¶ 5. Mrs. Schmidt did not initially report the incident for fear that Chief Robshaw would retaliate against her husband. ECF No. 4 ¶ 15; ECF No. 42-2 ¶ 4.

On September 29, 2011, Ofc. Schmidt suffered a hernia while at work. ECF No. 42-1 ¶ 13. Due to the hernia and required surgery, he was unable to work from September 30, 2011 until November 28, 2011. *Id.* at ¶ 14. During this time period, Chief Robshaw told Sergeant Edmund Gizinski: "As FOP [Fraternal Order of Police] Representative I am going to give you a head[s] up . . . Frank filed a worker's comp claim. Frank is out of leave so me and the Town Administrator are going to terminate Frank." ECF No. 42-5 ¶ 15; *see also* ECF No. 4 ¶ 37. This message was conveyed to Ofc. Schmidt shortly thereafter by another police officer. ECF No. 42-5 ¶ 17.

---

[2] In reviewing Defendant's Motion, the facts are construed in the light most favorable to the non-moving party and all justifiable inferences have been drawn in the non-moving party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009).

Mrs. Schmidt filed a "charge of discrimination" with the Prince George's County Human Relations Commission (the "PGCHR Commission") on November 15, 2011. ECF No. 42-12. She alleged that Chief Robshaw sexually harassed her on several occasions beginning in December 2009. *Id.* On November 29, 2011 Ofc. Schmidt filed his own Charge of Discrimination with the PGCHR Commission asserting discrimination based on disability as well as retaliation. ECF No. 42-13. He stated that he suffered a work-related injury, namely, a hernia, that Chief Robshaw did not permit others to donate paid leave, that he had been aiding his wife in her sexual harassment complaints, and that he heard that the Chief was not going to permit him to return to work because of his wife's actions. *Id.*

When Ofc. Schmidt returned to work on December 5, 2011, he was informed that Defendant was investigating whether Ofc. Schmidt was involved in and failed to report a hit and run accident in the summer of 2011. ECF No. 39-31. In April 2012, Ofc. Schmidt was suspended based on the hit and run allegations. ECF No. 42-1 ¶ 35. When Ofc. Schmidt was eventually permitted to return to work, he was often not allowed to enter the building, and at one point, was assigned menial tasks. *Id* at ¶ 36.

According to several police officers, during staff meetings between 2008 and 2011, Chief Robshaw regularly stated that he would punish anyone who attempted to exercise their right to report unfair or unlawful practices by him or the police department. ECF No. 42-4 at ¶ 8; *see also* ECF No. 4. ¶ 11-12. He further stated that he would "stack the trial board"—the entity responsible for handling internal disciplinary actions— and would seek to "terminate" any such employees. ECF No. 42-4 ¶¶ 8–9.

A hearing before a trial board was held in July 2012 on a total of 26 charges relating to the damage to the police car and Ofc. Schmidt's alleged failure to report the accident involving

3

the police vehicle. ECF No. 39-26 at 1. The trial board found Ofc. Schmidt guilty of making false statements to investigators and failing to disclose damage to the car. ECF No. 39-26 at 13-14. The trial board recommended a 40 hour suspension, a $1,000 fine and removal from the police car take home program. ECF No. 39-26 at 20. On August 28, 2012, Chief Robshaw increased the punishment and terminated Ofc. Schmidt's employment. ECF No. 39-27 at 5. Chief Robshaw indicated that he considered Ofc. Schmidt's past job performance and the entire record of the hearing in making his decision. ECF No. 39-27 at 1. Additionally, in consultation with the State Attorney's Office, Chief Robshaw found that because there had been a determination that Ofc. Schmidt had been deceitful, testimony he gave in court on police matters would be discredited, meaning that he could no longer fulfill his duties. *Id* at 2.

On September 21, 2012, the PGCHR Commission dismissed Ofc. Schmidt's November 29, 2011 charge of discrimination. ECF No. 13-10. The EEOC adopted the PGCHR Commission's determination and sent Ofc. Schmidt a right-to-sue letter on May 15, 2013. ECF No. 13-12. Meanwhile, Ofc. Schmidt filed another charge of discrimination on October 2, 2012 (after he was terminated in August 2012) alleging that he was retaliated against for filing the November 29, 2011 charge. ECF No. 42-14. He contended that because he filed the charge in November 2011, he was (1) given a written warning for violation of department policy on January 24, 2012; (2) suspended from police duty from April 2012 until August 2012; (3) reassigned to the Code and Photo Enforcement Unit; and (4) terminated on August 13, 2012.[3] *Id.*

Plaintiffs initiated this action on August 22, 2013 in the Circuit Court for Prince George's County, Maryland. ECF No. 1. On November 4, 2013 Plaintiffs filed an Amended Complaint to reflect receipt of the second-right to sue letter that they received from the EEOC regarding the October 2, 2012 discrimination charge. ECF No 4. On November 4, 2013, Defendant filed a

---

[3] Plaintiff appears to concede that his termination was actually effective August 28, 2012. ECF No. 42 at 13.

4

Notice of Removal to this Court. ECF No. 1. On September 25, 2014 the Court issued an Order granting in part and denying in part Defendant's Motion to Dismiss or Alternatively, Motion for Summary Judgment.[4] *See Schmidt I*, 2014 WL 4799039.

Following discovery, Defendant filed the presently pending Motion for Summary Judgment. ECF No. 39. Subsequently, Plaintiff filed an Opposition motion, ECF No. 42, and Defendant filed their reply, ECF No. 43. On June 30, 2016, the Court heard oral argument on the motion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[4] Specifically, the Court granted Defendant's Motion to Dismiss as to Count One (Family Medical Leave Act Reprisal) and Plaintiff's request for punitive damages. The Court also dismissed in part Counts III and V (Wrongful Discharge and Worker's Compensation Retaliation) merging the counts so that Plaintiff's claims were only based on violations of the Maryland Worker's Compensation Act. Finally, the Court denied Defendant's Motion as to Count Two (Equal Employment Opportunity ("EEO") Reprisal) and Count IV (Harm to Marital Unit). *See Schmidt I*, 2014 WL 4799039.

(1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 324–25). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. Count II: Equal Employment Opportunity ("EEO") Reprisal

In his Amended Complaint, Plaintiff alleges that Chief Robshaw retaliated against him for exercising his rights under Title VII, FEPA and the Prince George's County Human Relations Ordinance by: (1) participating in the investigation of his wife's sexual harassment claim, and (2) complaining of his disability, namely, the hernia he suffered on September 29, 2011.[5]

#### 1. Participation in Mrs. Schmidt's Sexual Discrimination Complaint

Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and its anti-retaliation provision serves to "prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or

---

[5] Ofc. Schmidt also appears to allege a discrimination claim under a hostile workplace theory, asserting that Chief Robshaw's comments to him about his wife constituted harassment. However, while potentially a more viable Title VII claim than his other discrimination allegations, it ultimately is also dismissed both because it was not pled in the Amended Complaint and Ofc. Schmidt did not file charges with the EEOC alleging a hostile workplace.

6

advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63, (2006); 42 U.S.C. § 2000e-3(a). To properly state a prima facie claim of retaliation under Title VII, a plaintiff must demonstrate three elements: "(1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013) (citations omitted).

Plaintiff's primary allegation of Title VII retaliation is that he was discriminated against because of his participation in his wife's sexual discrimination complaint. This claim fails because Plaintiff does not present any evidence regarding the first element, engagement in protected activity.

Title VII's retaliation provision protects employees who oppose "not only employment actions actually unlawful under Title VII but also employment actions [he or] she reasonably believes to be unlawful." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015). Claims based on participation in an investigation related to a Title VII claim have also been judged under the same reasonable belief standard. *See e.g. Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 894 (S.D. Ohio 2010); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000). Thus, the question before the Court is whether Ofc. Schmidt could reasonably believe that sexual discrimination against his wife, who was not an employee of the Cheverly Police Department, could constitute an employment discrimination claim under Title VII.

Although a retaliation claim may lie in the case of "third-party retaliation," the cases that have allowed such claims involved cases where both the person filing the discrimination complaint and the person adversely affected were employees or former employees of the same

7

company. *See, e.g., Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011) (holding that an employee who was terminated after his fiancée filed a charge of discrimination had standing to sue employer for retaliation where his fiancée was employed by the same company). By contrast, in *Reece v. Pocatello/Chubbuck School District No. 25*, a public school teacher claimed he was retailed against in violation of Title VII for reporting female students' allegations of sexual harassment by the school principal. 713 F. Supp. 2d 1222, 1225 (D. Idaho 2010). In granting the school district's motion for summary judgment, the Court stated that the Plaintiff could not "establish he held a reasonable belief that Title VII had been violated" because "Title VII only proscribes discrimination against an individual with respect to his compensation, terms, conditions, or *privileges of employment*." *Id.* at 1333 (emphasis added). The Court went on state that Plaintiff's "good faith belief the students were covered under Title VII is not enough; it must also be reasonable" and Plaintiff "could not have reasonably believed that he had opposed an unlawful employment practice by reporting sexual harassment claims made by students, who clearly are not employees of the District—no matter how broadly Title VII is construed." *Id.*

Here, as in *Reece*, it was not reasonable for Ofc. Schmidt to believe that his participation in the sexual discrimination complaint of his spouse, who was not an employee of the Cheverly police department, created an actionable violation under Title VII.[6] Thus, he was not engaged in protected Title VII activity and Defendant is entitled to summary judgment on this claim.

Plaintiff also raises identical state law claims under FEPA and the Prince George's County Human Rights Ordinance.[7] As other judges in this district have noted, these state statutes

---

[6] While participation rather than oppositional activity has been held to give broader protections, *see Laughlin v. Metro. Washington Airports Auth.*, 952 F. Supp. 1129, 1133 (E.D. Va. 1997), aff'd, 149 F.3d 253 (4th Cir. 1998)("while the 'participation' clause covers a narrower range of activities than the other, it gives those activities stronger protection than the 'opposition' clause provides."), nothing in the Court's research indicates that that would extend to providing protection for claims that are not reasonably covered under Title VII.

[7] Ofc. Schmidt's claims arising under the Prince George's County Code are best analyzed as violations of Md. Code Ann., State Gov't § 20-1202, which allows for a separate cause of action for violations of Country code, with the

8.

are to be interpreted consistently with Title VII. *See Finkle v. Howard Cty., Md.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014) ("FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII"); *Bryan v. Prince George's Cty., Md.*, No. CIV.A. DKC 10-2452, 2011 WL 2650759, at *8 (D. Md. July 5, 2011), aff'd, 484 F. App'x 775 (4th Cir. 2012)(noting that Prince George's County Code prohibition on employment discrimination tracks the language of Title VII's similar prohibition and explaining that Maryland courts look to Title VII when evaluating state discrimination claims). Thus, for the same reasons that Ofc. Schmidt's Title VII claim fails, his state law claims regarding the same conduct also fail.

## 2. Retaliation Based on Claim of Disability

Ofc. Schmidt also alleges that Defendant retaliated against him for filing a charge of discrimination based on disability. ECF No. 42 at 19-21; *see also* ECF No. 4 ¶ 111–15. Insofar as Ofc. Schmidt argues that any alleged retaliation occurred based on an assertion of his rights under federal law, his claim must fail. Disability is not a protected class under Title VII, which only protects employment discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2, and Ofc. Schmidt did not allege retaliation based on an assertion of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, which protects against employment discrimination based on disability, in his Amended Complaint.

Ofc. Schmidt does allege, however, retaliation for complaining of his disability in violation of FEPA and the Prince George's County Human Relations Ordinance, which do prohibit discrimination based on disability. See ECF No. 4 ¶ 111–15. Since Ofc. Schmidt has shown a genuine dispute of material fact regarding this claim of retaliation, the Defendant's motion for summary judgment is denied as to these claims.

---

relevant county code being Prince George's County Code § 2-185 *et seq*. Prince George's County Code is available online at https://www.municode.com/library/md/prince_george's_county/codes/code_of_ordinances.

As a preliminary matter, Defendant argues that Ofc. Schmidt's claims under the Prince George's County Human Relations Ordinance must fail as neither Ofc. Schmidt or his wife were residents of Prince George's County during the events in question. *See* ECF No. 39-2 at 28. Although Defendant cites to § 2-185 of the Prince George's County Code, which explains that the purpose of the Human Relations Commission is to eliminate discriminatory practices in the "areas of housing, employment, law enforcement, education, public accommodations, commercial real estate, and any other facets of the lives of its citizens where such practices may be found to exist," the law does not state that residency is a requirement to bring a suit. Prince George Cty Code §2-185 (2016). Therefore, the Prince George's County Code applies to Ofc. Schmidt.

Turning to the merits of his claim, the language in the Prince George's County Code defines a physical handicap as an impairment which "substantial[ly] limits one or more…major life activities", Prince George Cty Code §2-186(d)(14.1), and, thus, tracks the language in the ADA defining a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Furthermore, Maryland courts have "traditionally [sought] guidance from federal cases in interpreting Maryland's FEPA." *Eubanks v. Mercy Med. Ctr., Inc.*, No. CV WDQ-15-513, 2015 WL 9255326, at *7 (D. Md. Dec. 17, 2015). Thus, federal court discussion regarding claims of hernias, such as the one suffered by Plaintiff, as disabilities is relevant to the determination of Plaintiff's state law claims.

The ADA's retaliation provision specifies that "[n]o person shall discriminate against any individual because such individual ... made a charge ... under this chapter." 42 U.S.C. § 12203(a). "To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct (2) he suffered an adverse action, and (3) a causal link exists

between the protected conduct and the adverse action." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). "When those elements are satisfied, the burden shifts to the employer to rebut the presumption of retaliation by articulating a legitimate non-retaliatory reason for its actions. If the employer satisfies that burden, the plaintiff must demonstrate that the proffered reason is a pre-text for forbidden retaliation." *Coursey v. Univ. of Maryland E. Shore*, 577 F. App'x 167, 175 (4th Cir. 2014)(internal quotations and citations omitted).

Ofc. Schmidt's filing of an EEOC complaint on October 2, 2012 alleging retaliation for his November 29, 2011 complaint regarding disability discrimination satisfies the first element of his claim. ECF No. 42-14. Defendant argues that Ofc. Schmidt's hernia is not recognized as a disability under the ADA, ECF No. 39-2 at 20, and until recent years Defendant's position was clearly supported by relevant case law. *See Lundberg v. Burlington N. & Santa Fe Ry. Co.*, No. CIV.01-2286(DWF/JSM), 2003 WL 21402605, at *5 (D. Minn. June 17, 2003)(holding that Plaintiff's hernia condition was not sufficient to render her disabled under the ADA). However, Defendant's argument fails to take into account the 2008 Amendments to the ADA and the subsequent case law that has developed since that time. As the Fourth Circuit recently noted, the "ADA Amendments Act (ADAAA) was intended to make it easier for people with disabilities to obtain protection under the ADA. The regulation clarifies that the primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (internal quotations and citations omitted). Specifically, under the ADAAA, "the term 'substantially limits' [is to be] interpreted and applied to require a degree of functional limitation

that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j) (iv)).

The issue of whether or not a hernia may qualify as a disability under the ADA, and parallel state laws, after the 2008 amendments is now an open question, with several federal district courts finding that it does qualify. *See e.g. Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 881 (N.D. Ill. 2014)(finding that Plaintiff's hernia constituted a disability that substantially limited the major life activity of lifting); *Butler v. BTC Foods, Inc.*, No. CIV.A. 12-0492, 2014 WL 336649, at *4 (E.D. Pa. Jan. 30, 2014)(holding that Plaintiff established for purposes of summary judgment a material question as to whether he was disabled because of hernia surgery). However, at least one federal court has found that it still does not qualify. *See Brodzik v. Contractors Steel, Inc.*, 48 F. Supp. 3d 1183, 1189 (N.D. Ind. 2014)(finding that Plaintiff did not allege that his hernia was anything more than a one-time occurrence and thus not a substantial limitation in a major life activity). "Importantly, a plaintiff is not required to prove the conduct he opposed was actually an ADA violation. Rather, he must show he had a 'good faith belief' the conduct violated the ADA." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012)(internal citations omitted). Given the lack of clarity in the law, Ofc. Schmidt could reasonably believe that a hernia was covered under the ADA, and therefore, the FEPA and the Prince George's County Code. Thus, he was engaged in what he reasonably believed was protected activity and Ofc. Schmidt has established the first element of his prima facie case. In addition, Ofc. Schmidt easily establishes the second element of his prima facie case, adverse action, since it is uncontested that he was terminated on August 28, 2012. ECF No. 39-27 at 5.

The remaining dispute therefore is whether or not Ofc. Schmidt can satisfy the third element of the *prima facie* case by establishing a causal link between his protected activity, filing

an EEOC discrimination claim, and the adverse action, his termination. The Court finds that at this juncture he has at least raised a genuine dispute of fact as to this issue. Ofc. Schmidt has submitted sworn affidavits from three officers, along with an affidavit and deposition testimony from Ofc. Schmidt himself stating that Chief Robshaw regularly made statements during staff meetings between 2008 and 2011 that conveyed the message that he would punish anyone who attempted to exercise their right to report unfair or unlawful practices by him or the department. ECF No. 42-1 at1; ECF No. 42-3 at 2; ECF No. 42-4 at 2; ECF No. 42-5 at 2. Furthermore, according to these officers, Chief Robshaw explained that he appointed the trial board members and would make sure that any officer who challenged him never worked in law enforcement again. *Id.* Moreover, a short time after Ofc. Schmidt filed his November 29, 2011 charge, two officers heard Chief Robshaw say, in reference to Ofc. Schimdt, either "find some way to get rid of that mother fucker" or "find something to get rid of that mother fucker." ECF No. 42-4 at 3; ECF No. 42-5 at 3. These statements are direct evidence to support a prima facie case of causation.

Defendant makes several arguments to challenge Plaintiff's causation claims. First, Defendant contends that "the absence of temporal proximity" between the EEOC filing and Ofc. Schmidt's termination negates Ofc. Schmidt's claim since Ofc. Schmidt filed his first EEOC complaint in November 2011 and was not fired until August 2012. ECF No. 39-2 at 23. But this ignores the fact that the investigation against Ofc. Schmidt, which would culminate in his eventual August 2012 termination, began the moment he returned to work on December 5, 2011. ECF No. 39-31.

Defendant next argues that because the Plaintiffs have alleged multiple theories for his termination, including that his termination was in retaliation for supporting his wife's sexual

harassment charges and his pursuit of worker's compensation benefits, Ofc. Schmidt cannot establish but-for causation. ECF No. 39-2 at 24; *see also Kern v. S. Baltimore Gen. Hosp.*, 66 Md. App. 441, 447-48, 504 A.2d 1154, 1157 (1986)(holding that employee must prove that the sole reason for their discharge was their filing of a worker's compensation claim to prevail on a claim of wrongful discharge under Maryland's Worker's Compensation Act). However, the assertion of multiple *wrongful* reasons for termination does not mean that Plaintiff's causation argument fails. *See Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647, 650 (D. Md. 1998)(rejecting argument that employer could avoid liability since plaintiff alleged that his termination was in violation of both Title VII and the Maryland Worker's Compensation Act.)

Finally, Defendant argues that Chief Robshaw has a legitimate, non-discriminatory reason for firing Ofc. Schmidt – that is that Ofc. Schmidt had been untruthful to an investigator in the LEOBR proceedings and the Chief was concerned about the impact that would have on the Department's reputation and the Prince George's County State's Attorney's Office's ability to prosecute cases involving Ofc. Schmidt. ECF No. 39-27 at 3-5. In response, Ofc. Schimdt has submitted sworn affidavits from two of his fellow officers alleging that the investigation itself was a pre-textual retaliation for Ofc. Schmidt's allegations. ECF No. 42-4 at 4; ECF No. 42-5 at 4. As the Supreme Court has stated, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). Ofc. Schimdt also argues that Chief Robshaw's decision to impose a more severe punishment than the trial board recommended was also in retaliation for Ofc. Schmidt's assertion of his rights. ECF No. 42 at 13.

Presented with this conflicting evidence, a reasonable fact finder could find that Ofc. Schmidt's filing of an EEOC claim based on his disability was a but-for cause of Defendant's adverse actions. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented"). Thus, Defendant's motion for summary judgment is denied as to Ofc. Schmidt's state law based disability retaliation claims.

### B. Count III: Wrongful Discharge[8]

In Count III of the Amended Complaint, Plaintiff asserts a claim under the common law tort of wrongful discharge, alleging that he was terminated in retaliation (a) for exercising his right to file a worker's compensation claim under the Maryland Worker's Compensation Statute and (b) for exercising his rights under the Law Enforcement Officer's Bill of Rights ("LEOBR"). See ECF No. 4 ¶¶ 128–140. Even assuming that Plaintiff could establish a *prima facie* case of wrongful discharge, both of these claims are barred by governmental immunity.

The right to governmental immunity is "deeply ingrained in Maryland law and may not be waived in the absence of express or implied statutory authority." *Williams v. Prince George's Cty., MD*, 157 F. Supp. 2d 596, 603 (D. Md. 2001) (internal quotations and citations omitted). This right can be invoked by local governments, including municipalities such as Defendant.[9] *Id.* In general, a municipality's right to immunity encompasses immunity from "direct tort liability arising from the exercise of governmental functions." *Hoffman v. Baltimore Police Dep't*, 379 F. Supp. 2d 778, 790 (D. Md. 2005)(dismissing wrongful discharge claim against the City of

---

[8] As mentioned previously, in his original complaint, Plaintiff also filed a separate claim for "Worker's Compensation Retaliation" in Count V. The Court merged the claims together in *Schmidt I*. *See Schmidt I*, 2014 WL 4799039.

[9] In Defendant's "Disclosure of Affiliations and Financial Interest" counsel certifies that the Town of Cheverly Maryland is a "municipal corporation." *See* ECF 11 at 1.

15

Baltimore). Governmental functions have been held to include "personnel actions", *id.*, and "the operation of a police force." *Williams v. Prince George's Cty., MD*, 157 F. Supp. 2d 596, 604 (D. Md. 2001).

The Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. §§ 5-301-304, in turn, "requires the government to assume financial responsibility for a judgment against its employee by abolishing that immunity the government may have had against responsibility for the acts of its employees." *Khawaja v. Mayor & City Council, City of Rockville*, 598 A.2d 489, 494 (1991). However, the LGTCA "does not waive governmental immunity or otherwise authorize any actions directly against local governments." *Livesay v. Balt. Cty.*, 862 A.2d 33, 44 (2004) (internal citations omitted); *see also Hoffman v. Balt. Police Dep't*, 379 F. Supp. 2d 778, 790 (D. Md. 2005) (noting that "the LGTCA does not waive [governmental] immunity"). Therefore, absent a claim against an individual town employee such as Chief Robshaw, the Plaintiff's common law tort claim fails and the Defendant is entitled to summary judgment on Count III.

### C. Count IV: Loss of Consortium

Finally, in Count IV, both Plaintiffs, Ofc. Francis Schmidt and Mrs. Schmidt, allege "harm to the marital unit" based on the "defendant's tortious conduct" and "indirectly by the financial and emotional strain to [Ofc. Schmidt] which has rendered him unable to participate in marital and family life and to provide the financial and emotional support he would have provided but for Defendant's wrongful conduct." ECF No. 4 ¶¶ 146.

As mentioned in *Schmidt I*, "harm to the marital unit" is a tort not yet seen in Maryland. *See Schmidt I* at *13, n.14, 2014 WL 4799039. Plaintiffs' claim is better described as "loss of consortium," which is based on "a right to recover for an injury to the marital unit." *See*

*Gillespie-Linton v. Miles*, 473 A.2d 947, 949 (Md. Ct. Spec. App. 1984). A claim of "loss of consortium" is a derivative claim, predicated on a finding of harm under the tort of wrongful discharge in Count III. Since the Court found that Defendant is entitled to summary judgment as to Count III, the Court must also find that the Defendant is entitled to summary judgment on the derivative claim of loss of consortium.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 39, is granted in part and denied in part. Specifically, Defendant's Motion is granted with respect to Counts III and IV of the Complaint, ECF No. 4. With respect to Count II, Defendant's motion is granted as to Plaintiff's Title VII and state analogue claims and to Plaintiff's ADA claims, which were argued but not alleged in the Amended Compliant. However Defendant's motion is denied with respect to Plaintiff's EEO reprisal claims based upon his assertion of rights under state law in Count II regarding his disability. A separate Order follows.

Dated: August 2016

GEORGE J. HAZEL
United States District Judge